# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RANDALL LAMBERT, )
)
      Plaintiff, )
)
      v. )   Case No. CIV-12-382-FHS-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
      Defendant. )

## REPORT AND RECOMMENDATION

The claimant Randall Lambert requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 7, 1968, and was forty-two years old at the time of the administrative hearing. (Tr. 35, 125). He attended the twelfth grade but did not graduate, and has worked as a furniture assembler, fence builder, forklift operator, line worker, and industrial cleaner. (Tr. 25, 35). The claimant alleges inability to work since October 1, 2009, due to lupus. (Tr. 150).

## Procedural History

On November 3, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 3, 2011. (Tr. 16-27). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that

the claimant had the ability to perform a wide range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk/sit six hours in an eight-hour workday, but only occasionally stoop, balance, and climb stairs, and never crouch, crawl, kneel, or climb ladders. Additionally, the ALJ imposed the psychologically-based limitations of performing simple and some complex tasks, relating to others on a superficial work basis, and having limited public contact, but that he could adapt to a work situation. (Tr. 20). The ALJ concluded that although the claimant was unable to perform his past relevant work, he was nevertheless not disabled because there was other work he could perform in the national and regional economy, *i. e.*, price marker. (Tr. 26).

## Review

The claimant contends that the ALJ erred: (i) by failing to find the claimant's chronic abdominal pain, gastritis, chronic cholecystitis, chronic inflammation of the esophagus, fibromyalgia, chronic obstructive pulmonary disorder (COPD), and absence of the left kidney to be severe impairments; and (ii) by failing to consider *all* of his impairments throughout the evaluation process. In light of new evidence submitted to and considered by the Appeals Council, the undersigned Magistrate Judge finds the claimant's second contention persuasive.

The ALJ found that the claimant had the severe impairments of depression, anxiety, lupus, and arthritis, as well as the nonsevere impairments of gastritis, chest pain, hypertension, and COPD. (Tr. 18). The medical evidence relevant to this appeal reflects

that the claimant went to Bill Willis Mental Health Center and received treatment in early 2010. The practitioner diagnosed the claimant with adjustment disorder with mixed anxiety and depressed mood, noting his physical pain and inability to function at work, as well as polysubstance dependence with the last admitted use in 2009, as well as borderline intellect and systemic lupus erythematosus. (Tr. 570). He was initially assigned a Global Assessment of Functioning ("GAF") score of 59. (Tr. 572). Diane Brandmiller, Ph.D. performed a consultative mental status examination, finding that the claimant had major depressive disorder, single episode, mild; alcohol abuse; lupus; unemployment; and a GAF between 61 and 70. (Tr. 592). She found that both long-term and short-term memory were intact, as well as concentration and abstract thinking, and that he appeared able to understand and carry out simple instructions. (Tr. 592).

Evidence submitted to the Appeals Council reflects that Dr. George Howell began treating the claimant in August 2011, and completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) ("MSS"). He diagnosed the claimant with generalized musculoskeletal disorder with chronic severe pain and limitations of activities due to chronic/daily pain. As to his functional capacity, Dr. Howell marked that the claimant could sit/stand two hours in an eight-hour workday and walk one hour in an eight-hour workday. (Tr. 769). He further indicated that the claimant could not push/pull, or use his feet for repetitive motion, only occasionally bend, and never squat, crawl, climb, stoop, crouch, kneel, be exposed to unprotected heights, be around moving machinery, or drive automotive equipment. (Tr. 769). Additionally, he checked boxes

that the claimant would need to take unscheduled breaks, lie down at unpredictable times, and that his symptoms and pain would interfere with his ability to tolerate work stress. (Tr. 770). Further, the claimant would be absent more than four days a month, would need to elevate his feet and use an assistive device, as well as have a sit/stand option. (Tr. 770). In December 2010, a CT scan revealed that the claimant had only one kidney, and he was assessed with probable congenital renal agenesis. (Tr. 763, 788).

At the administrative hearing, the claimant testified that he was being treated for lupus, high blood pressure, arthritis, gastritis, fibromyalgia, COPD, ulcers, colitis, stomach problems, and gallbladder problems on a regular basis. (Tr. 41-43). He also stated that he received treatment at Bill Willis Mental Health Center for three or four months, but stopped going due to transportation problems. (Tr. 42). He stated that his pain was constant and in his hips, elbows, knees, and ankles, although it would vary in intensity. (Tr. 44-45). Additionally, he testified that he experiences muscle spasms three to four times a week, intermittent numbness, and difficulty with shortness of breath brought on by walking. (Tr. 45). He stated that he could walk half a block, stand up to forty-five minutes, and sit approximately forty-five minutes before he would have to get up. (Tr. 46-47). Additionally, he stated he could lift twenty pounds for a short amount of time, but could not stoop, bend, climb stairs or ladders, or crawl. (Tr. 47). He testified that he could use hand tools, but not for very long. (Tr. 48). He said that he could take care of his personal hygiene, but did not leave home very often . (Tr. 49-50).

In his written opinion, the ALJ summarized the claimant's hearing testimony and a majority of the medical evidence. He concluded by noting that the claimant had a normal range of motion with episodes of tender joints with decreased range of motion, along with normal reflexes and no sensory or motor deficit, as well as normal neurological findings and a normal gait. As to his mental status, the ALJ noted that he no longer takes medication and was within normal limits on mental status examination, and that his nonsevere impairments of gastritis, chest pain, hypertension, and COPD caused no more than minimal limitations. He then concluded that the record contained "no pathological clinical signs, significant medical findings, or any neurological abnormalities which would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in" light work. (Tr. 25).

The ALJ found at step two that the claimant's depression and anxiety were severe impairments, then merely mentioned at step four that he no longer took medications for them and his mental status examination was within normal limitations. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). *See also Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ

should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion].

Next, the claimant argues that the ALJ erred in failing to classify his chronic abdominal pain, gastritis, chronic cholecystitis, chronic inflammation of the esophagus, fibromyalgia, COPD, and absence of the left kidney as severe impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of

*all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment the ALJ entirely failed to consider the "cumulative effect of claimant's impairments." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing, which included additional treatment records containing Dr. Howell's MSS, as well as tests revealing the absence of the claimant's left kidney. The Appeals Council was required to consider this evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the hearing qualifies as new, material, and chronologically relevant, but the Appeals Council *did* consider it (Tr. 4), and the Court therefore has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353

F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Some of the additional records from the Health and Wellness Center of Sequoyah County may have been duplicative, but most of the evidence submitted to the Appeals Council clearly was new evidence. In particular, Dr. Howell's MSS and the treatment records as to the claimant's absence of a left kidney were never presented to the ALJ prior to his decision and were thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In discounting the claimant's credibility as to the severity of his impairments and his ability to do work, the ALJ relied, at least in part, on the conflict between his testimony and medical records showing he was "within normal limits." But Dr. Howell's MSS indicated that the claimant was not capable of working a full eight-hour workday due to his generalized musculoskeletal disabilities of the musculoskeletal system; major joints. (Tr. 769-771). This evidence suggests the claimant has impairments discounted or completely unaccounted for in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The claimant meets the insured status through December 31, 2014, so all of the records are relevant to the claimant's

condition as to the existence or severity of his impairments *before* termination. *See Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n. 2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969).

The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence because ALJ had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings. On remand, the ALJ should re-assess the claimant's RFC in light of the new evidence, and then re-determine the work he can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma